**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

CHARLES D. SKINNER and GREGORY
A. STRATTON, on behalf of
themselves and all others similarly
situated,
          *Plaintiffs-Appellants,*

          v.

NORTHROP GRUMMAN RETIREMENT
PLAN B and ADMINISTRATIVE
COMMITTEE OF NORTHROP GRUMMAN
RETIREMENT PLAN B,
          *Defendants-Appellees.*

No. 10-55161

D.C. No.
2:07-cv-03923-
JFW-AGR

OPINION

Appeal from the United States District Court
for the Central District of California
John F. Walter, District Judge, Presiding

Argued and Submitted
February 9, 2012—Pasadena, California

Filed March 16, 2012

Before: Alfred T. Goodwin, Diarmuid F. O'Scannlain, and
Susan P. Graber, Circuit Judges.

Opinion by Judge Goodwin

3227

## COUNSEL

Ellen M. Doyle and William T. Payne, Stember Feinstein Doyle & Payne LLC, Pittsburgh, Pennsylvania, for the plaintiffs-appellants.

Chris C. Scheithauer, McDermott Will & Emery LLP, Irvine, California; and Nancy G. Ross, McDermott, Will & Emery LLP, Chicago, Illinois, for the defendants-appellees.

Mary Ellen Signorille, AARP Foundation Litigation, Washington, D.C., for the amicus curiae.

---

**OPINION**

GOODWIN, Circuit Judge:

Appellants Charles Skinner and Gregory Stratton appeal summary judgment rejecting their claims under the Employee Retirement Income Security Act of 1974 ("ERISA"). We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

## I.   Facts and procedural history

Appellants were employees of Litton Industries, Inc., and participated in its retirement plan, which was called Litton Industries, Inc., Retirement Plan B ("Litton Plan B"). Following corporate mergers and plan modifications, Appellants sued the successor corporation, Northrop Grumman, and Northrop Grumman Retirement Plan B ("Northrop Plan B"), the plan that replaced Litton Plan B, under ERISA § 502(a)(1)(B) to enforce their understanding of their rights under Northrop Plan B.

By June 2004, Appellant Skinner was anticipating retirement, and he received a pension calculation packet. That packet's formulas illustrated how Skinner's transition benefit would be calculated based on his salary, contributions, and age at retirement. The formulas included an "annuity equivalent offset." In December 2004 and April 2005, Skinner received additional pension calculation packets, both of which also included the annuity equivalent offset. Skinner testified at his deposition that, after he received the packet in December 2004, he understood how his benefits would be calculated, including the annuity equivalent offset. In May 2005, Skinner retired.

By February 2005, Appellant Stratton was anticipating retirement, and he received a pension calculation packet. That packet's formulas included an "annuity equivalent offset." In December 2005, the plan administrators provided a summary of material modifications ("SMM"), which included the annuity equivalent offset. Stratton testified at his deposition that he received the SMM, that it clearly explained the annuity equivalent offset, and that he understood how that offset would affect his pension. In May 2006, Stratton received another pension calculation packet, which also contained the annuity equivalent offset. In July 2006, Stratton retired.

The district court granted summary judgment for the defendants after concluding that Appellants had not raised a genuine issue of material fact. We reversed and remanded the case upon our conclusion that an ambiguity existed between summary plan descriptions ("SPDs") issued to employees in earlier years and the plan master documents that were actually being enforced by the plan administrators. That ambiguity was related to the controversial "annuity equivalent offset" that plan administrators used to reduce annual benefit amounts based on the age of the participant at retirement. We held, pursuant to this court's earlier decisions in *Bergt v. Retirement Plan for Pilots Employed by MarkAir, Inc.,* 293 F.3d 1139, 1143 (9th Cir. 2002), and *Banuelos v. Construction Laborers' Trust Funds for Southern California,* 382 F.3d 897, 904 (9th Cir. 2004), that the ambiguity created a triable issue.

The district court again granted summary judgment, and Appellants again appealed. We deferred argument and submission of the second appeal until the Supreme Court's resolution of *CIGNA Corp. v. Amara,* 131 S. Ct. 1866 (2011). In that case, the Supreme Court overruled, in relevant parts, our two prior decisions that had treated SPD language as if it were an enforceable part of the retirement plan. In holding that the SPD language was not part of the plan, the Court made it clear that "summary documents, important as they are, pro-

vide communication with beneficiaries *about* the plan, but that their statements do not themselves constitute the *terms* of the plan for purposes of § 502(a)(1)(B)." *Id.* at 1878. We called for supplemental briefing and argument. We now hold that summary judgment was appropriate on Appellants' claims under § 502(a)(1)(B) and § 502(a)(3).

## II.   Discussion

**[1]** Recognizing that *Amara* has foreclosed their principal theory of relief, Appellants have focused this appeal on equitable remedies under ERISA § 502(a)(3), which allows a participant "to obtain other appropriate equitable relief" to redress ERISA violations. 29 U.S.C. § 1132(a)(3)(B).

Appellants have alleged an ERISA violation. Viewing the facts in the light most favorable to Appellants, the administrative committee failed to ensure that plan participants were furnished with an SPD that was "sufficiently accurate and comprehensive" and that included "a statement clearly identifying circumstances which may result in . . . offset [or] reduction . . . of any benefits" that the participants would reasonably expect. 29 U.S.C. §§ 1021(a), 1022(a) (quoted), 1024(b); 29 C.F.R. § 2520.102-3(*l*) (quoted). The remaining issue is whether summary judgment was appropriate on Appellants' claims for equitable relief.

**[2]** In dictum, the *Amara* Court stated that, under appropriate circumstances, § 502(a)(3) may authorize three possible equitable remedies: estoppel, reformation, and surcharge. 131 S. Ct. at 1878-80. Appellants have conceded, both in their brief and at oral argument, that they presented no evidence of reliance on the inaccurate SPD and that they do not claim estoppel. Appellants do, however, seek reformation and surcharge.

## A.   Reformation

**[3]** Appellants argue that we should reform the terms of Northrop Plan B's master documents to be consistent with the

terms of the 2003 SPD. It is unclear whether we should analyze reformation in the context of trust law or contract law because retirement plan documents are similar to both trusts and contracts. *See Amara*, 131 S. Ct. at 1877. Under both theories, however, reformation is proper only in cases of fraud and mistake. *See, e.g.*, *Cont'l Ins. Co. of N.Y. v. Cotten*, 427 F.2d 48, 53 (9th Cir. 1970) ("Since fraud and mutual mistake are absent in this case, reformation was improper."). The difference lies in whose fraud and mistake are material.

## 1. Mistake theory

In the law of trust, a court may reform a trust instrument to accord with the settlor's intent if there is evidence that a mistake of fact or law affected the terms of the instrument and if there is evidence of the settlor's true intent. RESTATEMENT (THIRD) OF TCRUSTS §§ 12, 62 (2003); RESTATEMENT (THIRD) PROP. (WILLS & OTHER DONATIVE TRANSFERS) § 12.1 (2003); *see also* RESTATEMENT (SECOND) OF AGENCY § 8D & cmt. a (1958).

In the law of contract, a court may reform a contract to reflect the true intent of the parties if both parties were mistaken about the content or effect of the contract. RESTATEMENT (SECOND) OF CONTRACTS § 155 (1981). The court may reform the contract to capture the terms upon which the parties had a meeting of the minds. *See Am. President Lines, Ltd. v. United States*, 821 F.2d 1571, 1582 (Fed. Cir. 1987); *Schongalla v. Hickey*, 149 F.2d 687, 690 (2d Cir. 1945).

**[4]** Whether we view the drafter of Northrop Plan B as a settlor or as a party to a contract, Appellants have presented no evidence that Northrop Plan B contains terms that fail to reflect that drafter's true intent. Appellants argue that the 2003 SPD is evidence of the drafter's true intent and that the master document contains a mistake. That argument fails. Appellants have provided no evidence of authorship of the 2003 SPD or of the 2003 SPD's capturing any intent at all,

other than the intent to create an "accurate and comprehensive" summary of Northrop Plan B. It would be unreasonable for us to infer otherwise.

## 2.   Fraud theory

In the law of trust, a court may reform a trust to the extent that it was procured by wrongful conduct, such as undue influence, duress, or fraud. RESTATEMENT (THIRD) OF TRUSTS §§ 12, 62 cmt. a (2003); RESTATEMENT (THIRD) OF PROP. (WILLS & OTHER DONATIVE TRANSFERS) § 8.3 (2003). A trust is procured by wrongful conduct if that conduct caused the settlor to act in a way that he or she would not have otherwise acted. RESTATEMENT (THIRD)OF PROP. (WILLS & OTHER DONATIVE TRANSFERS) § 8.3 (2003).

In the law of contract, a court may reform a contract when (1) one party seeks reformation, (2) that party's assent was induced by the other party's misrepresentations as to the terms or effect of the contract, and (3) the party seeking reformation was justified in relying on the other party's misrepresentations. RESTATEMENT (SECOND) CONTRACTS § 166 (1981).

**[5]** Appellants have presented no evidence that Northrop Plan B contains terms that were induced by fraud, duress, or undue influence. The inconsistency between the 2003 SPD and the plan master document is not evidence of fraudulent inducement. The SPD summarizes the plan, so it appears to have been created after the plan, and Appellants have provided no evidence to allow us to infer otherwise.

Appellants argue that we should adopt the reasoning in *Amara*'s dictum discussing reformation, but we decline to do so because the facts in *Amara* are materially distinguishable. In *Amara*, the Court suggested that reformation might be appropriate on remand because the district court had already found that the employer had "intentionally misled its employees." 131 S. Ct. at 1874. In this case, by contrast, Appellants

have provided no evidence that Northrop Grumman materially misled its employees and, even if it had misled its employees, Appellants have conceded that they did not rely on any of the misleading information.

## B.   Surcharge

**[6]** In the district court, Appellants argued that the administrative committee breached its fiduciary duty by failing to enforce the terms of the 2003 SPD instead of the terms of the plan master document. We find no such duty. The committee may have a duty to enforce the terms of the plan, *see* 29 U.S.C. § 1132(a)(1)(B), (3), but the terms of an SPD are not the terms of the plan, *Amara*, 131 S. Ct. at 1878.

The committee may have breached a different duty. It had a statutory duty to provide participants with an SPD that was "sufficiently accurate and comprehensive to reasonably apprise" Appellants of their rights and obligations under the plan, 29 U.S.C. §§ 1022(a), 1024, and to clearly identify offsets and reductions, 29 C.F.R. § 2520.102-3(l).

Under that second theory of breach, the remedy of surcharge could hold the committee liable for benefits it gained through unjust enrichment or for harm caused as the result of its breach.

### 1.   Unjust enrichment

**[7]** A trustee (or a fiduciary) who gains a benefit by breaching his or her duty must return that benefit to the beneficiary. RESTATEMENT (THIRD) TRUSTS § 100(b) (2012); RESTATEMENT (SECOND) TRUSTS § 205 (1959); RESTATEMENT (THIRD) RESTITUTION & UNJUST ENRICHMENT § 43 (2011); RESTATEMENT (FIRST) RESTITUTION § 138 (1937). In this case, Appellants have presented no evidence that the committee gained a benefit by failing to ensure that participants received an accurate SPD.

## 2.  Compensatory damages for actual harm

A trustee who breaches his or her duty could be liable for loss of value to the trust or for any profits that the trust would have accrued in the absence of the breach. RESTATEMENT (THIRD) TRUSTS § 100(a) (2012); RESTATEMENT (SECOND) TRUSTS § 205 (1959). The beneficiary can pursue the remedy that will put the beneficiary in the position he or she would have attained but for the trustee's breach.

[8] Appellants seek compensatory relief. But considering that Appellants did not rely on the inaccurate SPD, they establish no harm for which they should be compensated.

[9] Appellants argue that the "harm" of being deprived of their statutory right to an accurate SPD is a compensable harm, but we disagree. Appellants' interpretation would render the advisory committee strictly liable for every mistake in summary documents. In sum, Appellants have not shown that their current positions are any different than they would have been without the inaccurate SPD. The judgment is AFFIRMED.