**ON REHEARING**

**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

DEBBIE MCCRAVY,

*Plaintiff-Appellant,*

v.

METROPOLITAN LIFE INSURANCE
COMPANY,

*Defendant-Appellee.*

SECRETARY OF THE UNITED STATES
DEPARTMENT OF LABOR,

*Amicus Supporting Appellant.*

No. 10-1074

DEBBIE MCCRAVY,

*Plaintiff-Appellee,*

v.

METROPOLITAN LIFE INSURANCE
COMPANY,

*Defendant-Appellant.*

SECRETARY OF THE UNITED STATES
DEPARTMENT OF LABOR,

*Amicus Supporting Appellee.*

No. 10-1131

Appeals from the United States District Court
for the District of South Carolina, at Charleston.
Patrick Michael Duffy, Senior District Judge.
(2:08-cv-01933-PMD)

Argued: May 15, 2012

Decided: July 5, 2012

Before TRAXLER, Chief Judge, and KING and WYNN,
Circuit Judges.

No. 10-1074 reversed and remanded; No. 10-1131 vacated by
published opinion. Judge Wynn wrote the opinion, in which
Chief Judge Traxler and Judge King concurred.

**COUNSEL**

**ARGUED:** Robert Edward Hoskins, FOSTER LAW FIRM,
LLP, Greenville, South Carolina, for Debbie McCravy. Eliza-
beth Hopkins, UNITED STATES DEPARTMENT OF
LABOR, Washington, D.C., for Amicus Supporting Debbie
McCravy. Ian Seth Linker, METROPOLITAN LIFE INSUR-
ANCE COMPANY, New York, New York, for Metropolitan
Life Insurance Company. **ON BRIEF:** Peter Stris, STRIS &
MAHER, LLP, Dallas, Texas, for Debbie McCravy. M. Patri-
cia Smith, Solicitor of Labor, Timothy D. Hauser, Associate
Solicitor, Plan Benefits Security Division, James L. Craig, Jr.,
Senior Regulations Attorney, UNITED STATES DEPART-
MENT OF LABOR, Washington, D.C., for Amicus Support-
ing Debbie McCravy. J. D. Quattlebaum, HAYNSWORTH,
SINKLER & BOYD, PA, Greenville, South Carolina, for
Metropolitan Life Insurance Company.

**OPINION**

WYNN, Circuit Judge:

29 U.S.C. § 1132(a)(3), part of the Employee Retirement Income Security Act ("ERISA"), empowers participants and beneficiaries "to obtain other appropriate equitable relief" to redress violations of ERISA or ERISA plans. In *CIGNA Corp. v. Amara*, 131 S. Ct. 1866 (2011), the United States Supreme Court recently made clear that Section 1132(a)(3) allows for remedies traditionally available at equity and that those remedies include surcharge and estoppel—the remedies at the heart of Plaintiff Debbie McCravy's appeal. In light of *Amara*, we conclude that such remedies are indeed available to McCravy in her suit against defendant Metropolitan Life Insurance Company ("MetLife"), an ERISA plan fiduciary. Accordingly, we reverse the district court's decision holding otherwise and remand for further proceedings.

I.

As a full-time employee for Bank of America, McCravy participated in the company's life insurance and accidental death and dismemberment ("AD&D") plan issued and administered by MetLife. Under the plan, an insured could purchase coverage for "eligible dependent children." McCravy elected to buy coverage for her daughter, Leslie McCravy, and paid premiums, which MetLife accepted, from before Leslie's nineteenth birthday until she was murdered in 2007 at the age of 25.

Following Leslie's death, McCravy, the beneficiary of the policy insuring her daughter, filed a claim for benefits. MetLife denied McCravy's claim, contending that Leslie did not qualify for coverage under the plan's "eligible dependent children" provision. Per the summary plan description, "eligible dependent children" are children of the insured who are unmarried, dependent upon the insured for financial support,

and either under the age of 19 or under the age of 24 if enrolled full-time in school. According to MetLife, because Leslie was 25 at the time of her death, she no longer qualified as an "eligible dependent child[]." MetLife therefore denied McCravy's claim and attempted to refund the multiple years' worth of premiums MetLife had accepted to provide coverage for Leslie.

McCravy, however, refused to accept the refund check. Instead, she filed suit in federal court in May 2008. In her complaint, McCravy alleged, among other things, that

> [I]t was represented to Plaintiff by Defendant that Leslie had dependent life and [AD&D] insurance coverage up to the time of her tragic death . . . . In fact, premiums were actually paid to Defendant and Defendant accepted such premiums for coverage for Leslie up until her death and it was represented to the Plaintiff that Leslie remained a participant in the plan.

J.A. 6. Nevertheless, per the complaint, "[u]nbeknownst to [McCravy], Leslie was not eligible to actively participate in the plan because Leslie was over the age of 19. [But b]ecause [McCravy] and Leslie believed Leslie had life insurance and [AD&D] coverage and believed Leslie was participating in the plan, Leslie did not purchase different . . . insurance . . . ." *Id.*

McCravy asserted that MetLife's actions constituted a breach of fiduciary duty under 29 U.S.C. § 1104. She sought recovery under 29 U.S.C. § 1132(a)(2) or (a)(3), pleading entitlement to recovery under waiver, estoppel, "make whole," and other equitable theories. McCravy also pled various claims under state law, including promissory estoppel and breach of contract.

In September 2008, MetLife filed a "Memorandum in Support of Preemption," which the district court treated as a motion to dismiss. On June 12, 2009, the district court ruled that McCravy's state law claims were preempted by ERISA. Regarding her breach of fiduciary duty claim, the district court ruled that McCravy could not recover under Section 1132(a)(2).[1]

As for McCravy's claim under Section 1132(a)(3), the district court ruled that McCravy could recover, but that her recovery was limited, as a matter of law, to the life insurance premiums wrongfully withheld by MetLife for coverage that McCravy never actually had on the life of her daughter. The district court therefore denied MetLife's motion to dismiss McCravy's Section 1132(a)(3) claim. In so ruling, the district court recognized the extreme inequities that such a restrictive reading of Section 1132(a)(3) created but indicated that precedent left the court with little choice:

> [W]hile this Court is compelled to such a holding by the law of ERISA as interpreted by higher courts, it cannot ignore the dangerous practical implications of this application. The law in this area is now ripe for abuse by plan providers, which are almost uniformly more sophisticated than the people to whom they provide coverage. With their damages limited to a refund of wrongfully withheld premiums, there seems to be little, if any, legal disincentive for plan providers not to misrepresent the extent of plan coverage to employees or to wrongfully accept and retain premiums for coverage which is, in actuality, not available to the employee in question under the written terms of the plan.

---

[1]McCravy does not challenge the district court's ruling on her state law claims or her Section 1132(a)(2) claim.

If the employee never discovers the discrepancy, the plan provider continues to receive windfall profits on the provision in question without bearing the financial risk of having to provide coverage. If the worst happens and the employee does file for the benefits for which he or she had been paying and seeks the coverage he or she believed was provided, the plan provider may then simply deny the employee's benefits claim, and have their legal liability limited to a refund of the premiums. The worst case scenario for fiduciary behavior which is either irresponsible or dishonest, then, in this context, is simply that the plan provider does not profit, but they would never be punished and would not be required to provide the coverage for which the employee was paying and for which, in cases like the present matter and *Amschwand* [*v. Spherion Corp.*, 505 F.3d 342 (5th Cir. 2007)], the employee asserts he or she was assured by the provider existed.

Plaintiff's allegations in this case present a compelling case for the availability of some sort of remedy for the breach of fiduciary duty above and beyond the mere refund of wrongfully retained premiums.

J.A. 158-59.

On June 22, 2009, McCravy moved for summary judgment regarding the wrongfully retained premiums and reserved her right to appeal the district court's limitation of her recovery under Section 1132(a)(3). In January 2010, the district court entered a final order and judgment awarding McCravy the improperly withheld premiums. McCravy appealed, and MetLife cross-appealed. On May 16, 2011, this Court filed an opinion affirming the district court's order. That same day, the Supreme Court of the United States filed *Amara*, 131 S.

Ct. 1866. On the basis of *Amara*, we granted McCravy's petition for panel re-hearing.

## II.

On appeal, McCravy challenges the district court's limitation of her available remedies under ERISA, arguing that Section 1132(a)(3) does indeed allow for surcharge and equitable estoppel. We review the district court's determination de novo. *Sucampo Pharm., Inc. v. Astellas Pharma, Inc.*, 471 F.3d 544, 550 (4th Cir. 2006). We "accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and "draw all reasonable inferences in favor of the plaintiff." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009).

## A.

Central to the resolution of this case is the Supreme Court's decision in *Amara*. Before *Amara*, various lower courts, including this one, had (mis)construed Supreme Court precedent to limit severely the remedies available to plaintiffs suing fiduciaries under Section 1132(a)(3). *See, e.g.*, *LaRue v. De Wolff, Boberg & Assocs., Inc.*, 450 F.3d 570, 575 (4th Cir. 2006) (holding that *Mertens v. Hewitt Assoc.*, 508 U.S. 248 (1993), "and its progeny compel the conclusion that" "monetary relief" for losses "sustained as a result of the alleged breach of fiduciary duties" "falls outside the scope of § 1132(a)(3)"), *vacated on other grounds*, 552 U.S. 248 (2008).

But with *Amara*, "[a] striking development," the Supreme Court "expanded the relief and remedies available to plaintiffs asserting breach of fiduciary duty under [Section 1132(a)(3)] and therefore seeking make-whole relief such as equitable relief in the form of 'surcharge.'" Lee T. Polk, *Statutory Provisions – Civil Remedies*, 1 ERISA Practice and Litigation § 5:4 (West 2012). In *Amara*, employees filed a class action

against an employer and pension plan, claiming that the employer's conversion of a traditional defined benefit plan to a cash balance retirement plan "provided them with less generous benefits." 131 S. Ct. at 1870. According to the plaintiffs, the employer's disclosures and notices regarding the change and the new plan were defective, harmful, and contrary to ERISA. *Id.*

The Supreme Court addressed whether broad remedies were available under Section 1132(a)(3), with its "other appropriate equitable relief" language, stating:

> [Section 1132(a)(3)] . . . allows a participant, beneficiary, or fiduciary "to obtain other *appropriate equitable relief*" to redress violations of (here relevant) parts of ERISA "or the terms of the plan."
>
> * * *
>
> We have interpreted the term "appropriate equitable relief" in [Section 1132(a)(3)] as referring to "'those categories of relief'" that, traditionally speaking (i.e., prior to the merger of law and equity) "'were *typically* available in equity.'"
>
> * * *
>
> The case before us concerns a suit by a beneficiary against a plan fiduciary (whom ERISA typically treats as a trustee) about the terms of a plan (which ERISA typically treats as a trust). It is the kind of lawsuit that, before the merger of law and equity, respondents could have brought only in a court of equity, not a court of law.
>
> * * *
>
> [T]he District Court's remedy essentially held CIGNA to what it had promised, namely, that the

new plan would not take from its employees benefits they had already accrued. This aspect of the remedy resembles estoppel, a traditional equitable remedy. Equitable estoppel "operates to place the person entitled to its benefit in the same position he would have been in had the representations been true." And, as Justice Story long ago pointed out, equitable estoppel "forms a very essential element in . . . fair dealing, and rebuke of all fraudulent misrepresentation, which it is the boast of courts of equity constantly to promote."

[T]he District Court injunctions require the plan administrator to pay to already retired beneficiaries money owed them under the plan as reformed. But the fact that this relief takes the form of a money payment does not remove it from the category of traditionally equitable relief. Equity courts possessed the power to provide relief in the form of monetary "compensation" for a loss resulting from a trustee's breach of duty, or to prevent the trustee's unjust enrichment. Indeed, prior to the merger of law and equity this kind of monetary remedy against a trustee, sometimes called a "surcharge," was "exclusively equitable."

The surcharge remedy extended to a breach of trust committed by a fiduciary encompassing any violation of a duty imposed upon that fiduciary. Thus, insofar as an award of make-whole relief is concerned, the fact that the defendant in this case . . . is analogous to a trustee makes a critical difference. In sum, contrary to the District Court's fears, the types of remedies the court entered here fall within the scope of the term "appropriate equitable relief" in [Section 1132(a)(3)].

*Id.* at 1878-80 (citations omitted).

In sum, the portion of *Amara* in which the Supreme Court addressed Section 1132(a)(3) stands for the proposition that remedies traditionally available in courts of equity, expressly including estoppel and surcharge, are indeed available to plaintiffs suing fiduciaries under Section 1132(a)(3).

B.

In this case, McCravy first argues that the district court committed legal error by limiting her damages to premiums wrongfully withheld by MetLife because the remedy of surcharge is available to her under Section 1132(a)(3). Specifically, McCravy contends that she, as "the beneficiary of a trust," is rightfully "seeking to 'surcharge' the trustee [MetLife] in the amount of life insurance proceeds lost because of that trustee's breach of fiduciary duty." Appellant's Br. at 20. In light of *Amara*, we must agree.

As the Supreme Court pronounced in *Amara*, "surcharge," i.e., "make-whole relief," constitutes "appropriate equitable relief" under Section 1132(a)(3). 131 S. Ct. at 1880. Indeed, "[e]quity courts possessed the power to provide relief in the form of monetary 'compensation' for a loss resulting from a trustee's breach of duty, or to prevent the trustee's unjust enrichment. . . . [P]rior to the merger of law and equity this kind of monetary remedy against a trustee, sometimes called a 'surcharge,' was 'exclusively equitable.'" *Id.* (citations omitted).

The Supreme Court has made quite clear that surcharge is available to plaintiffs suing fiduciaries under Section 1132(a)(3). We therefore agree with McCravy that her potential recovery in this case is not limited, as a matter of law, to a premium refund. Accordingly, we reverse the district court's determination to the contrary.[2] Whether McCravy's breach of

---

[2]MetLife attempts to downplay *Amara*'s impact by arguing that the portion of the opinion addressing remedies available under Section 1132(a)(3)

fiduciary duty claim will ultimately succeed and whether sur-charge is an appropriate remedy under Section 1132(a)(3) in the circumstances of this case are questions appropriately resolved in the first instance before the district court.

## C.

McCravy next argues that the remedy of equitable estoppel is also available under Section 1132(a)(3). Specifically, she contends that the court can "apply an equitable estoppel . . . to prevent MetLife from . . . denying her right to convert coverage [for her daughter, from dependent life coverage to an individual policy] because the conversion did not occur within 31-days of her dependent reaching age 19."[3] Appellant's Supp. Br. at 11. Again, we must agree.

As the Supreme Court stated in *Amara*, "[e]quitable estoppel operates to place the person entitled to its benefit in the same position he would have been in had the representations been true." 131 S. Ct. at 1880 (quotation marks omitted). In *Amara*, that meant holding the defendant fiduciary "to what it had promised, namely, that the new plan would not take from its employees benefits they had already accrued." *Id.* And the Supreme Court made plain that such estoppel is "a traditional equitable remedy"—i.e., a remedy available to plaintiffs suing a fiduciary under Section 1132(a)(3).

---

is merely dictum. Even assuming for the sake of argument that it is, we cannot simply override a legal pronouncement endorsed just last year by a majority of the Supreme Court. *See United States v. Fareed*, 296 F.3d 243, 246 (4th Cir. 2002) (following "*dictum* endorsed by six justices" of the Supreme Court and citing *Gaylor v. United States*, 74 F.3d 214, 217 (10th Cir. 1996) (stating that federal court of appeals "is bound by Supreme Court dicta almost as firmly as by the Court's outright holdings, particularly when the dicta is recent and not enfeebled by later statements")).

[3]A dependent, such as Leslie, who loses coverage because she "is no longer an eligible dependent[,]" has a right to convert and continue coverage through an individual policy "within 31 days following the termination of the group dependent life coverage." J.A. 47-48.

Thus, we agree with McCravy that her potential recovery in this case is not limited, as a matter of law, to a premium refund and that she may indeed seek equitable estoppel under Section 1132(a)(3).[4] Accordingly, we reverse the district court's determination to the contrary. And, again, whether McCravy's breach of fiduciary duty claim will ultimately succeed and whether equitable estoppel is an appropriate remedy in the circumstances of this case are questions appropriately resolved in the first instance before the district court.[5]

In sum, with *Amara*, the Supreme Court clarified that remedies beyond mere premium refunds—including the surcharge and equitable estoppel remedies at issue here—are indeed available to ERISA plaintiffs suing fiduciaries under Section 1132(a)(3). This makes sense—otherwise, the stifled state of the law interpreting Section 1132(a)(3) would encourage abuse by fiduciaries. Indeed, fiduciaries would have every incentive to wrongfully accept premiums, even if they had no idea as to whether coverage existed—or even if they affirmatively knew that it did not. The biggest risk fiduciaries would face would be the return of their ill-gotten gains, and even this risk would only materialize in the (likely small) subset of circumstances where plan participants actually needed the bene-

[4]We recognize that this Court had previously indicated, e.g., in *Coleman v. Nationwide Life Insurance Co.*, that equitable estoppel is of limited applicability in ERISA cases. 969 F.2d 54 (4th Cir. 1992). This matter is, however, easily distinguishable from *Coleman*. In *Coleman*, the Court addressed a situation in which premiums for an ERISA plan had not been paid and alleged oral modifications to the written terms of the benefit plan indicating coverage despite the failure to pay premiums. *Id.* at 58. Neither of those circumstances is before us here.

[5]We note that, per *Amara*, "summary documents, important as they are, provide communication with beneficiaries *about* the plan, but that their statements do not themselves constitute the *terms* of the plan . . . ." 131 S. Ct. at 1878. The record before us reflects, and the parties at oral argument confirmed, that only the summary plan document, and not the plan itself, was before the district court and before us. Because McCravy's claims and MetLife's defenses depend upon the contents of the plan, their resolution on remand will require the actual plan documents.

fits for which they had paid. Meanwhile, fiduciaries would enjoy essentially risk-free windfall profits from employees who paid premiums on non-existent benefits but who never filed a claim for those benefits. With *Amara*, the Supreme Court has put these perverse incentives to rest and paved the way for McCravy to seek a remedy beyond a mere premium refund.

## III.

MetLife, as cross-appellant, challenges the district court's order granting summary judgment for McCravy and awarding her $311.09, the amount of premiums she had paid to MetLife to insure Leslie. Notably, however, the district court, in its order, nowhere addressed the merits of McCravy's breach of fiduciary duty claim. It simply noted that "[b]oth parties agree that McCravy is entitled to a return of $311.09 in premiums. Based on this stipulation, the court grants McCravy's motion for summary judgment." J.A. 171.

Crucially, the district court's summary judgment order rested on its prior determination, in its dismissal order, that Plaintiff's damages under Section 1132(a)(3) were "limited to a refund of the withheld premiums." J.A. 160. As we have already made clear, in light of *Amara,* we must disagree. Given that summary judgment on this issue was entered under an, at the time most understandable, misapprehension of the law, we vacate the order and remand for further proceedings.

## IV.

In sum, we reverse the district court's determination in its dismissal order that McCravy's remedy under Section 1132(a)(3) is limited to a refund of premiums paid, i.e., that equitable remedies including surcharge and estoppel are unavailable under the statute as a matter of law. We vacate the district court's summary judgment order awarding McCravy a return of her premiums only, an order entered based upon

the district court's earlier, erroneous decision. And we remand this case for further proceedings.

No. 10-1074 *REVERSED AND REMANDED*
No. 10-1131 *VACATED*