BERZON, Circuit Judge,
concurring and dissenting:
The majority opinion disregards Supreme Court guidance in CIGNA Corp. v. Amara, — U.S. -, 131 S.Ct. 1866, 179 L.Ed.2d 843 (2011), and creates a conflict with recent decisions of the Fourth, Fifth, and Seventh Circuits. As Gabriel may be entitled to an equitable remedy similar to surcharge, I dissent from Part 11(B)(3) of the majority opinion, but concur in the remainder.
Gabriel seeks a “remedy that will put [him] in the position he ... would have attained but for the trustee[s]’[ ] breach.” Skinner v. Northrop Grumman Ret. Plan B, 673 F.3d 1162, 1167 (9th Cir.2012). Amara described “this kind of monetary remedy against a trustee” as “ ‘exclusively equitable.’” 131 S.Ct. at 1880 (citation omitted). Although Amara identified such relief as “sometimes called a ‘surcharge,’ ” the focus was not on the particulars of traditional surcharge law. Id. (citation omitted). Instead, Amara embraced the concept that where the defendant is “analogous to a trustee,” the “charge [against] the defendant, as a trustee, [is] for breach of trust,” and “award [is] of make-whole relief,” then “the remedies ... fall within the scope of the term ‘appropriate equitable relief.’ ” Id. (citation omitted).
The majority understands Amara otherwise — as providing for make-whole relief against a trustee for breach of fiduciary duty only when the breach (1) “result[s] in a loss to the trust estate[;]” or (2) “allowfs] the fiduciary to profit at the expense of the trust.” Maj. Op. at 658; see also id. at 665 (quoting Skinner, 673 F.3d at 1167). As Gabriel has failed to demonstrate either an unjust enrichment by a trustee or a loss to the plan, the majority holds he is not entitled to surcharge as a matter of law. Id. at 664-66.
But the holding of Amara is not so limited. Amara noted that the “surcharge remedy [had] extended to a breach of trust committed by a fiduciary encompassing any violation of a duty imposed upon that fiduciary.” 131 S.Ct. at 1880 (emphasis added); see also J. Eaton, Handbook of Equity Jurisprudence § 212, at 439 (1901) (“A breach of trust by a trustee creates a personal obligation ... which may be enforced against the trustee or his estate in a proper proceeding.”). Explaining its reasoning, Amara noted that “before the merger of law and equity,” a beneficiary could bring suit for breach of fiduciary duty “only in a court of equity, not a court of law.” 131 S.Ct. at 1879. Equity courts accordingly developed “specially tailored remedies” such as surcharge “to fit the nature of the right they sought to protect because ‘[e]quity suffers not a right to be without a remedy.’ ” Kenseth v. Dean Health Plan, Inc., 722 F.3d 869, 878 (7th Cir.2013) (quoting Amara, 131 S.Ct. at 1879) (quotation marks and citation omitted). The broad character of the remedies *668 identified in Amara is clearly described in the portion of a treatise it quoted:
Equity is primarily responsible for the protection of rights arising under trust, and will provide the beneficiary with whatever remedy is necessary to protect him and recompense him for loss, in so far as this can be done without injustice to the trustee or third parties.
The court is not confined to a limited list of remedies but rather will mold the relief to protect the rights of the beneficiary according to the situation involved.
G. Bogert & G. Bogert, Trusts and Trustees § 861 at 3-4 (rev.2d ed.1995) (second sentence quoted in Amara, 131 S.Ct. at 1881).
“Thus, insofar as an award of make-whole relief is concerned, the fact that the defendant ... is analogous to a trustee makes a critical difference.” Amara, 131 S.Ct. at 1880 (distinguishing prior case law concerning non-fiduciary defendants). Beyond that “critical difference,” id., Amara was concerned with whether relief sought under 29 U.S.C. § 1132(a)(3) “resembles forms of traditional equitable relief,” id. at 1879 (emphasis added), not whether the precise requirements for obtaining such relief under the common law of trusts are met. Make-whole relief for breach of fiduciary duty against a trustee conforms to that description, whether or not traditional trust law would have provided that relief under the “surcharge” terminology.
Given its breadth, Amara has rightly been described as a “ ‘[a] striking development,’ ” McCravy v. Metro. Life Ins. Co., 690 F.3d 176, 180 (4th Cir.2012), “that significantly altered the understanding of equitable relief available under” § 1132(a)(3), Kenseth, 722 F.3d at 876, in cases alleging a breach of fiduciary duty. Indeed, several other circuits have overruled their own precedents in its wake. See, e.g., McCravy, 690 F.3d at 180 (“Before Amara, various lower courts, including this one, had (mis)construed Supreme Court precedent to limit severely the remedies available to plaintiffs suing fiduciaries under [§ ] 1132(a)(3).”). The majority nonetheless treats Amara as a continuation of prior case law, Maj. Op. at 659, hardly citing it in the portion of its opinion holding Gabriel not entitled to relief under § 1132(a)(3) as a matter of law. See id. at 660-66.
The recent decisions from the Fourth, Fifth, and Seventh Circuits confirm that the doctrine of surcharge is, after Amara, not as narrow as the majority contends. In McCravy, for example, the defendant accepted life insurance premiums from a plan participant on behalf of the participant’s daughter, even though the daughter was ineligible for coverage. 690 F.3d at 178. When the participant filed a claim for benefits following her daughter’s death, the plan “attempted to refund multiple years’ worth of premiums” rather than pay the claim. Id. The Fourth Circuit held that under the surcharge doctrine, which it characterized as “make-whole relief,” the participant’s “potential recovery” was “not limited ... to a premium refund.” Id. at 181. That was so even though paying the participant’s benefits would hold the fiduciaries liable neither for “loss of value to the trust,” nor for “profits that the trust would have accrued in the absence of the breach.” Skinner, 673 F.3d at 1167.
Similarly, the participant in Gearlds v. Entergy Services, Inc., 709 F.3d 448 (5th Cir.2013), waived medical benefits available under his wife’s retirement based on his own plan’s “assurances” that he would be covered for life. The plan later determined that it had inaccurately “computed] Gearlds’s service time under the retirement plan” and withdrew his medical coverage. Id. at 449-50. The Fifth Circuit held that Gearlds stated a “plausible *669 claim” for surcharge relief, id. at 452, again, notwithstanding that the medical benefits he sought had nothing to do with unjust enrichment by a trustee or a loss to the trust.
Finally, in Kenseth, the Seventh Circuit construed Amara as stating a similarly broad view of surcharge — that “make-whole money damages” are an available “equitable remedy” whenever a plan participant demonstrates (1) a breach of a fiduciary duty, (2) causing damages. 722 F.3d at 882. Kenseth had undergone surgery based on the health plan’s customer service representative’s assurance that the surgery would be covered, but the plan subsequently denied coverage. Id. at 871-72. Noting that Amara “clarified that equitable relief may come in the form of money damages when the defendant is a trustee in breach of a fiduciary duty[,]” id. at 878-79, the Seventh Circuit held “that if Kenseth is able to demonstrate a breach of fiduciary duty ..., and if she can show that the breach caused her damages, she may seek an appropriate equitable remedy including make-whole relief in the form of money damages,” id. at 883.
McCravy, Gearlds, and Kenseth confirm that under Amara, surcharge is not limited to the circumstances in which a trustee personally benefits from a breach of duty or a plan incurs a loss. Instead, the remedy is based on equity courts’ “power to provide relief in the form of monetary ‘compensation’ for a loss resulting from a trustee’s breach of duty,” and is intended to “make” a plan participant “whole.” Amara, 131 S.Ct. at 1880.
The majority disputes that these recent cases “define the availability of surcharge.” Maj. Op. at 660. In the majority’s view, these cases “merely corrected district courts’ erroneous” conclusions that no monetary relief was available under § 1132(a)(3), and “remanded for the district courts to assess ... the appropriateness of the surcharge remedy, in the first instance.” Id. at 660. These reasoned opinions from other circuits cannot be dispatched so easily. Had they concluded, like the majority here, that surcharge was limited to unjust enrichment by a trustee or a loss to the plan, McCravy, Gearlds, and Kenseth would have each held their respective participant not entitled to surcharge as a matter of law. In each case, a participant sought benefits to which he was not entitled under the terms of the plan. There was neither claimed unjust enrichment by the trustee nor a loss to the plan. There was simply an alleged breach of fiduciary duty and a loss of benefits to the participant himself. Although each remanded to the district court to determine whether the defendant “breached its fiduciary duty” and “[i]f so, ... whether that breach ... harmed” the participant, the appellate courts made clear that if these questions were answered in the affirmative, the participant could “seek an appropriate equitable remedy including make-whole relief in the form of money damages.” Kenseth, 722 F.3d at 890, 883.
Indeed, the majority’s narrow view of Amara is unsupported by the facts of that case itself, which involved neither a loss to the trust estate nor unjust enrichment by the fiduciary. The breach alleged in Amara was not the underlying decision to alter CIGNA’s retirement benefit offerings. Instead, it was the fiduciary’s “failure] to give [plan participants] proper notice of changes to their benefits,” Amara, 131 S.Ct. at 1870, and instead sending “descriptions of its new plan [which] were significantly incomplete and misle[a]d[ing],” id. at 1872. Although the fiduciary saved $10 million annually by changing the retirement benefits available to its employees, those savings did not result from the alleged breach. There is *670 no indication that but — for the improper notice, CIGNA would not have instituted the plan changes and obtained the resulting savings. Indeed, the district court in Amara noted that participants may' not “have received a larger benefit were the notices accurate,” acknowledging that the harm caused by the improper notice was different from the harm caused by the changes to the plan. Amara v. Cigna Corp., 534 F.Supp.2d 288, 353 (D.Conn.2008), aff'd, 348 Fed.Appx. 627 (2d Cir.2009), vacated and remanded, — U.S. -, 131 S.Ct. 1866, 179 L.Ed.2d 843 (2011). Amara was not, therefore, a case in which “a breach of trust committed by a fiduciary resulted in a loss to the trust estate or allowed the fiduciary to profit at the expense of the trust” — the only two circumstances in which the majority believes surcharge to be available. Maj. Op. at 658-59.
Nor does our precedent in Skinner limit ERISA make-whole equitable relief for a breach of fiduciary duty to “only unjust enrichment and losses to the trust estate” such that we are “bound” to hold as the majority does. Maj. Op. at 660-61. Although Skinner describes only two bases for surcharge, it does not identify them as exclusive, or opine that no other retroactive make-whole relief is available under § 1132(a)(3). Indeed, Skinner notes that “[t]he beneficiary can pursue the remedy that will put the beneficiary in the position he or she would have attained but for the trustee’s breach,” 673 F.3d at 1167, echoing the broader view of surcharge-like relief expressed in Amara.
The majority opinion thus seriously misunderstands the reach of Amara and brings us needlessly into conflict with all other circuits to have considered the scope of the equitable remedies available after Amara. I therefore dissent from the majority’s limitations on the make-whole equitable relief available under § 1132(a)(3).
As the majority holds Gabriel not entitled to an “appropriate equitable remedy” under § 1132(a)(3) as a matter of law, it affirms the district court without considering whether Gabriel has raised a triable issue of fact as to the other elements of a breach of fiduciary duty claim. I would conclude he has.
There can be little dispute that the fiduciary defendants breached their duties to Gabriel by giving him incorrect information about his rights under the plan. See, e.g., Bins v. Exxon Co. U.S.A., 220 F.3d 1042, 1054 (9th Cir.2000) (en banc) (noting “an ERISA fiduciary’s duty ... [to] giv[e] complete and accurate answers to the employee’s questions”). Gabriel has also adduced sufficient evidence to raise a triable issue as to whether that breach caused him harm by leading him to retire when he was still healthy enough to work. That the “the misinformation [Gabriel] received in 1997 from a plan representative did not prevent him from obtaining any benefit under the Plan to which he otherwise would have been entitled,” Maj. Op. at 665 (emphasis added), because it was “eleven years too late for him to” accrue the required additional years of service, as noted by the Fund’s Appeals Committee, is not a pertinent consideration. Gabriel’s complaint is not that he could have accrued additional years of service had he been properly informed, but that he relied on the representation' that he had already accrued adequate service, and on the resulting pension payments. As there are triable issues of fact regarding whether Gabriel was harmed by the defendants’ breach, and, if so, whether make-whole relief would remedy that harm, I would reverse the district court’s grant of summary judgment in favor of defendants and remand for further proceedings.[1]
*671 Because the panel misconstrues Amara and misapplies it to this case, I respectfully dissent.

. I recognize that the record could support the conclusion that Gabriel knew or should *671 have known he was not vested as early as 1979. As there are triable issues of fact regarding Gabriel's reliance on defendants’ misrepresentations, this case is not appropriate for summary judgment.