# United States Court of Appeals
## For the First Circuit

No. 21-1290

LORNA SHIELDS,

Plaintiff, Appellant,

v.

UNITED OF OMAHA LIFE INSURANCE COMPANY,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. George Z. Singal, U.S. District Judge]

Before

Barron, Chief Judge,
Selya and Gelpí, Circuit Judges.

Trevor D. Savage, with whom Christopher C. Taintor and Norman, Hanson & DeTroy, LLC were on brief, for appellant.
Christine D. Han, Trial Attorney, with whom Seema Nanda, Solicitor of Labor, Jeffrey M. Hahn, Council for Litigation, and G. William Scott, Associate Solicitor for Plan Benefits Security, were on brief for Secretary of Labor, amicus curiae.
Brooks R. Magratten, with whom Cameron R. Goodwin and Pierce Atwood, LLP were on brief, for appellee.
Byrne J. Decker, with whom Mark E. Schmidtke was on brief, for American Council of Life Insurers, amicus curiae.

October 4, 2022

**BARRON**, **Chief Judge**. In 2019, Lorna Shields, the beneficiary of the life insurance policy that her late husband, Myron Shields, acquired through his employer, Duramax Marine, LLC ("Duramax"), filed suit in the U.S. District Court for the District of Maine against United of Omaha Life Insurance Company ("United").[1] Her complaint sets forth one claim for recovery of plan benefits under 29 U.S.C. § 1132(a)(1)(B) of the Employee Retirement and Investment Security Act ("ERISA") and one claim for breach of fiduciary duty under 29 U.S.C. § 1132(a)(3) of that same statute. The District Court granted summary judgment for United on both claims and denied Lorna's motion for summary judgment on those same claims. She now appeals.

We affirm the District Court's summary judgment rulings with respect to the recovery-of-plan-benefits claim. But, as to the breach-of-fiduciary-duty claim, we vacate the District Court's denial of Lorna's motion for summary judgment as well as its grant of United's motion for summary judgment and remand for further proceedings.

---

[1] Throughout this opinion, we refer to Lorna Shields and Myron Shields by their first names. We mean no disrespect by doing so and use first names only for ease of exposition.

Myron began working for Duramax in 2008. Duramax's active, salaried employees were eligible to enroll in the "basic" life insurance policy that Duramax offered and United underwrote.

The basic policy provided coverage equal to twice the employee's annual earnings, not to exceed $300,000. Employees did not need to establish that they were in good health to be eligible for this type of coverage.

Active, salaried employees of Duramax who wanted life insurance coverage beyond the basic policy also could enroll in the Group Voluntary Term Life Insurance Policy ("voluntary life insurance policy"), which was underwritten by United as well. An employee who enrolled in the voluntary life insurance policy could elect coverage equal to one, two, or three times the employee's basic annual salary, not to exceed $200,000.

The voluntary life insurance policy is an "employee welfare benefit plan" under ERISA. 29 U.S.C. § 1002(1). Under ERISA, an employee welfare benefit plan is governed by a "written instrument" that describes "the allocation of responsibilities [between the employer and the insurer] for the operation and administration of the plan." Id. § 1102(a),(b). The terms of the voluntary life insurance policy, including the allocation of responsibilities between Duramax and United, were laid out in the

Certificate of Insurance that was provided to Duramax employees.[2] We will refer to the Certificate of Insurance as "the Plan."

Under the Plan, a Duramax employee enrolled in the voluntary life insurance policy is automatically guaranteed coverage up to $100,000 ("guaranteed issue"). To receive coverage in excess of the guaranteed issue ("excess coverage"), the employee must provide a "statement of physical condition or other evidence of good health" that is "acceptable" to United ("good health requirement").[3] United provided Duramax with "Evidence of Good Health" forms "with the expectation that Duramax would have the form completed by any employee who elected" to enroll in excess coverage and that Duramax would transmit the completed form to United.

---

[2] Two different Certificates of Insurance were operative during Myron's employment at Duramax: one certificate that became operative in 2007, and another certificate that replaced the 2007 policy in 2017. Unless otherwise specified, language attributed to the Plan is taken from the 2007 Certificate of Insurance.

[3] Under the 2017 version of the Plan, the good health requirement took the form of "Evidence of Insurability," rather than a "statement of physical condition or other evidence of good health." Evidence of Insurability is defined under the 2017 policy as "proof of good health acceptable to United" which "may be obtained through questionnaires, physical exams or written documentation, as required by [United]." Neither Lorna nor United has made an argument that there is a substantive difference between the language defining the good health requirement in the 2007 and 2017 plans relevant to this case, nor can we identify such a difference.

When Myron began his active, salaried employment at Duramax, Duramax provided him with a "Salaried Election Form" through which he could make his benefits selections. Myron completed the Salaried Election Form on October 29, 2008. He opted to enroll in both the basic and the voluntary life insurance policies, with coverage under the latter policy equal to three times his annual salary.[4] Myron designated his wife, Lorna, as the beneficiary of his life insurance policies.

On November 3, 2008, Myron submitted the completed Salaried Election Form to Duramax. Although he had enrolled in excess coverage under the voluntary life insurance policy, Myron was not given an Evidence of Good Health form or any other form to complete to satisfy the good health requirement by United or Duramax at the time that he submitted the Salaried Election Form to Duramax or at any time between then and his death.

In October 2017, Myron asked Thomas Spann, Duramax's Human Resources manager, to verify that his life insurance policy was active. He was assured by Spann that he had coverage up to

_____

[4] Total coverage under the voluntary life insurance policy was capped at the lesser of either three times an employee's annual salary or $200,000. Myron selected the maximum amount of excess coverage available to him. At the time of that selection, three times Myron's annual salary was less than $200,000, so that maximum available coverage was equal to three times his annual salary. Myron's salary increased, and at the time of his death on June 5, 2018, three times his salary exceeded $200,000, so the maximum coverage available to him under the voluntary life insurance policy was capped at $200,000.

- 6 -

three times his annual salary.  From Myron's return of the Salaried Election Form in November 2008 to his death in 2018, Duramax deducted the premiums for excess coverage under the voluntary life insurance policy (as well as premiums for the basic life insurance policy) from Myron's paycheck and transferred those funds to United.

Duramax sent United a "census" every two years that described the number of employees enrolled in the voluntary life insurance policy and the rate at which they were insured ("biannual census"[5]).  The biannual census contained the number of employees Duramax believed to be enrolled, the level of their coverage according to Duramax's records, basic biographic information (such as their birth dates), and, sometimes, the names of the individual employees.  On at least one such census, Myron's name was included in the list of employees whom Duramax identified as being enrolled for excess coverage under the voluntary life insurance policy.

Myron died on June 5, 2018.  Lorna submitted a claim for life insurance benefits that same month to United.

United paid Lorna $236,000 in life insurance benefits on July 16, 2018 -- $136,000 for Myron's coverage under the basic

---

[5] We note that the best descriptor of these lists would be biennial rather than biannual, as the record shows that the lists were sent every other year (rather than twice each year).  However, the parties, the Magistrate Judge, and the District Court refer to the censuses as "biannual."  For consistency, we do the same.

life insurance policy and $100,000 for the guaranteed issue of the voluntary life insurance policy.  United denied Lorna's claim for an additional $100,000 of excess coverage under the voluntary life insurance policy.  The $100,000 amount was the difference between the guaranteed issue and the full amount of excess coverage which Myron selected when he submitted the Salaried Election Form to Duramax in 2008.

Lorna appealed United's partial denial of her claim in September 2018.  United denied the appeal on October 4, 2018.

United explained in its denial of Lorna's appeal for the excess coverage that:

> [An employee] will become insured on the first day of the Policy month which coincides with or follows the day [w]e approve the statement of physical condition or other evidence of good health . . . .  Evidence of Good Health was required when your husband initially elected voluntary life insurance in excess of the Guarantee Issue Limit.  Since we did not receive and approve Evidence of Good Health, we are unable to allow the additional $100,000 of voluntary life insurance coverage.

Lorna again requested that United review the partial denial of her claim in May 2019.  United responded by stating that "[a]ll administrative rights to appeal have been exhausted" and that no further review would be conducted.

Lorna filed this suit against United in the District of Maine on October 3, 2019.  The operative complaint first seeks to recover the benefits that she contends that she is owed pursuant

- 8 -

to 29 U.S.C. § 1132(a)(1)(B). The complaint claims in the alternative that she is entitled to equitable relief under 29 U.S.C § 1132(a)(3) because United breached its fiduciary duties by "accept[ing] . . . premiums [from Myron] for nearly a decade" for excess coverage when Myron was not actually insured for that excess coverage.

United answered the complaint on December 6, 2019. The matter was referred to a magistrate judge, who entered a scheduling order for limited discovery.

Lorna objected to that schedule and moved for further discovery, seeking permission to designate a testifying expert as well as for limited discovery on four broad topics. United opposed the motion on the ground that much of the information that Lorna sought was already in the administrative record. Lorna then narrowed her discovery request to only "how and by whom the bi-annual audits of Duramax were received, to whom they were circulated, and what attention they were given." Shields v. United of Omaha Life Ins. Co., No. 2:19-cv-00448, 2020 WL 1956811, at *3 (D. Me. Apr. 23, 2020).

On April 23, 2020 the Magistrate Judge granted Lorna's motion for discovery "with respect to information bearing on what United did with biannual audit information sent to it by Duramax[]," but denied her request to designate an expert. Id. at *6. The Magistrate Judge then ordered the parties to confer as to

- 9 -

the manner and timing of the permitted discovery. Id. The parties filed a joint status report on May 20, 2020.

The joint status report explained that Lorna had proposed nine interrogatories and twelve document requests and that she also had sought to take the corporate deposition of United under Federal Rule of Civil Procedure ("Rule") 30(b)(6). United objected and declined to respond to all but two of the interrogatories and four of the document requests, arguing that much of what Lorna requested was broader than the limited discovery that the Magistrate Judge had authorized. United also objected to the corporate deposition.

The Magistrate Judge sustained United's objections on June 3, 2020, relying on Grady v. Hartford Life & Accident Insurance Co., No. 08-339-P-H, 2009 WL 700875 (D. Me. Mar. 12, 2009)), to explain that "[d]iscovery is the exception, rather than the rule, in an appeal of a plan administrator's denial of ERISA benefits."[6] Id. at *1. With respect to the interrogatories and document requests, the Magistrate Judge concluded that they "were either encompassed within permitted discovery" -- that is, the two interrogatories and four requests for documents to which United

---

[6] We note that the Magistrate Judge in granting only limited discovery relied on cases evaluating the appropriateness of discovery in recovery-of-plan-benefits actions brought under § 1132(a)(1)(B), and we address that ruling only as to that claim.

- 10 -

was willing to respond -- "or otherwise overbroad or impermissibly vague." Regarding United's objection to Lorna's request to take a corporate deposition under Rule 30(b)(6), the Magistrate Judge also sustained that objection "without prejudice to its renewal based on the permitted discovery responses," but in doing so "caution[ed] that the heightened standard for the allowance of discovery in ERISA cases would have to be met" if Lorna did seek to renew that request.

Discovery proceeded. United responded to the two interrogatories and four requests for documents to which it had assented. Then, on July 30, 2020, Lorna renewed her motion for leave to depose United, which United again opposed.

The Magistrate Judge denied Lorna's renewed motion on August 25, 2020. The Magistrate Judge ruled that, in light of the "limited discovery in the form of two interrogatories and four requests for production of documents" and United's "significant, unequivocal statement . . . that it 'makes the insurability determination when it is advised that an employee is enrolling for coverage that requires Evidence of Insurability,'" Lorna "had not shown that the further extraordinary relief of permitting a corporate deposition of the defendant in this ERISA case would have more than incremental value in developing the factual record."

Lorna objected to the Magistrate Judge's denial of her motion in September 2020, and the District Court denied that

objection in an electronic order.  Both parties then moved for summary judgment.

The District Court granted summary judgment to United on Lorna's recovery-of-plan-benefits and breach-of-fiduciary-duty claims and denied Lorna's motion for summary judgment on those same claims.  Shields v. United of Omaha Life Ins. Co., 527 F. Supp. 3d 22, 40 (D. Me. 2021).  Lorna timely appealed.

## II.

We first consider Lorna's challenge to the District Court's grant of summary judgment to United on her recovery-of-plan-benefits claim under 29 U.S.C. § 1132(a)(1)(B).  Our review is de novo.  Livick v. Gillette Co., 524 F.3d 24, 28 (1st Cir. 2008).

Lorna bases this challenge on various grounds, none of which has merit.  Moreover, because we reject this challenge, we also reject Lorna's challenge to the District Court's denial of her motion for summary judgment on this claim, which we review de novo as well, id.

## A.

Lorna contends, in part, that the District Court erred because the record establishes -- or, at least supportably shows -- that United acted arbitrarily and capriciously in denying her $100,000 of benefits for Myron's excess coverage under the voluntary life insurance policy.  She contends that this is so

- 12 -

because United based that decision on a misinterpretation of the Plan. We see no basis in the record for so concluding.

The record makes the following clear. Lorna submitted a claim to United for Myron's $100,000 of excess coverage, which United denied. United then explained in a letter to Lorna that it denied Lorna's request because "Evidence of Good Health was required" when Myron initially selected excess coverage and United had "not receive[d] and approve[d] Evidence of Good Health" from Myron.

Based on the letter, Lorna contends that United construed the Plan to provide that "Myron's [excess] coverage beg[an] only once he submitted a particular form titled 'Evidence of Good Health'" (emphasis in original). She further contends that this construction of the Plan was arbitrary and capricious, Stephanie C. v. Blue Cross Blue Shield of Mass. HMO Blue, Inc., 813 F.3d 420, 427 (1st Cir. 2016), because the Plan expressly provides that excess coverage begins once United "approve[s] the statement of physical condition or other evidence of good health" (emphasis added), and so does not require that any particular form be provided.[7]

---

[7] Because Lorna and United both address the denial-of-plan-benefits claim using language from the 2007 version of the Plan, we analyze the claim using language from the 2007 version as well.

We need not decide whether United reasonably could interpret the Plan to provide that the good health requirement may be satisfied only by submitting an Evidence of Good Health form. Lorna admits that Myron did not submit any document that might be construed as either a "statement of physical condition" or "other evidence of good health." And, while she contends that such "other evidence" was, in effect, presented to United because Myron's "'healthy, daily presence at work' . . . could [have been] sufficient to establish [his] insurability," (quoting Silva v. Metro. Life Ins. Co., 762 F.3d 711, 719 (8th Cir. 2014)), we reject that contention.

The Plan separately makes clear that Duramax employees are only eligible to participate in the voluntary life insurance policy if they are "actively working," and it defines "actively working" as "performing the normal duties of a regular job for [Duramax]" at Duramax's place of business or another location at the direction of Duramax. Thus, the good health requirement would be rendered superfluous if, as Lorna contends, it could be satisfied by an employee showing merely that he has met a condition that is a condition that any employee must satisfy to be eligible to participate in the voluntary life insurance policy. Bouchard v. Crystal Coin Shop, Inc., 843 F.2d 10, 16 (1st Cir. 1988) (finding that a plan administrator's proposed understanding of the terms of a pension plan that does not "render[] any Plan provisions

superfluous" is not arbitrary and capricious).  That being so, we do not see how it was arbitrary and capricious for United to deny Lorna's claim for excess coverage, given Myron's failure to submit any evidence that could satisfy the good health requirement.

**B.**

Lorna next contends that the District Court erred because the record at the very least supportably shows (insofar as it does not also conclusively establish) either that United waived the good health requirement for Myron or, alternatively, that Duramax, acting as United's actual or apparent agent, did so on United's behalf.  But, here, too, we are not persuaded.

**1.**

To make out the United-focused variant of this version of Lorna's recovery-of-plan-benefits claim, Lorna must establish that United "actually knew [it] was relinquishing a benefit, and . . . acted voluntarily in doing so."  Smart v. Gillette Co. Long-Term Disability Plan, 70 F.3d 173, 182 (1st Cir. 1995).  Lorna contends that the record, at the least, supportably shows (insofar as it does not indisputably establish) just that.  That is so, she contends, because the record supportably shows that United "'knew that [Myron] had [failed to provide an "Evidence of Good Health" form],' and . . . '[i]n spite of that knowledge,' it nonetheless appeared to deem him 'insurable' and accepted premiums from him" (alterations in original).

Lorna points to United's statement in its objection to Lorna's motion to take a corporate deposition under Rule 30(b)(6) that "United makes the insurability determination when it is advised that an employee is enrolling for coverage" for which the good health requirement must be satisfied. Lorna then contends that the evidence in the record shows that Myron's name was included on some of the biannual censuses and that the inclusion of his name on those censuses "advised" United that Myron was "enrolling for coverage." Because the record shows that United accepted premiums from Myron for excess coverage for years thereafter without raising Myron's failure to satisfy the good health requirement, Lorna contends, it follows that United "deemed him insurable" for excess coverage. Thus, she concludes, United, by making that finding, necessarily waived the requirement that Myron provide evidence of good health.

The uncontradicted record shows, however, that United used the biannual censuses only to determine how much to charge Duramax for the voluntary life insurance policy and that the only United employees who reviewed the biannual censuses did so exclusively for sales-to-employers purposes. Therefore, we do not see on what basis it would be reasonable to infer -- rather than merely to speculate -- that United had deemed Myron insurable for excess coverage, such that United then could be found to have waived the evidence of good health requirement by acting as it

- 16 -

did.[8]  See Mondol v. City of Somerville, 746 F. App'x 35, 37 (1st Cir. 2018) ("[T]o make the leap from the evidence in the record to the conclusion that genuine issues of material fact exist . . . would require us to create a pyramid of inferences, which we won't do.").

**2.**

Lorna's fallback argument is that the evidentiary "hole[] in the record" that we have just described "only exist[s] by virtue of the District Court's decision to deny [her] the opportunity to fill [it]" by "engag[ing] in meaningful discovery." She thus contends that the District Court's order denying her objection to the Magistrate Judge's denial of her motion seeking leave to depose United under Rule 30(b)(6) impermissibly prevented her from developing facts that would prove her case. And so, Lorna contends, for this reason both the District Court's grant of summary judgment to United and its denial of summary judgment to her on the recovery-of-plan-benefits claim cannot stand.

Lorna is right that evidence about "what United knew and when [it] knew it" with respect to whether "employees were qualified for the coverage they had selected" is "central to [her]

---

[8] We do not address whether, even if Lorna were to show that United determined that Myron was insurable despite Myron's failure to satisfy the good health requirement, United's hypothetical determination alone would suffice to show a waiver of the good health requirement.

- 17 -

claim for waiver" (emphasis in original). But, it does not follow that the Magistrate Judge's conclusion that the deposition that she sought to take was unnecessary "was plainly wrong and resulted in substantial prejudice" to her in her ability to prove her claim. Filiatrault v. Comverse Tech., Inc., 275 F.3d 131, 138 (1st Cir. 2001) (quoting Mack v. Great Atl. & Pac. Tea Co., 871 F.2d 179, 186 (1st Cir. 1989)).

Lorna does point to United's response to one of her interrogatories into whether the insurance policy sales employees who received the biannual census or "anyone else at United made an effort to confirm that participants paying for the heightened level of voluntary life insurance were qualified for it and, if not, why not." There, United responded:

> With respect to the Duramax Marine LLC group and for the relevant time period, neither [insurance policy sales employees] nor others at United would verify that employees were properly enrolled at their desired level of life insurance coverage because, per Policy terms, "[t]he Policyholder is responsible for enrolling eligible persons for coverage . . . " (emphasis added).

Lorna contends that this answer was "unresponsive" to the question because there could be daylight between verifying that a given employee was "enrolled" and verifying that the employee was "qualified" for coverage. That is so, Lorna argues, because insurance policy sales employees "may not have 'verif[ied] that employees were properly enrolled at their desired level of

- 18 -

insurance,'" but they could have been responsible for "determining whether the documentation provided by those persons was sufficient to 'qualify' them for coverage" (alteration in original).  Thus, Lorna argues, she should have been permitted to pursue discovery into the nuances of United's answer through cross examination at a corporate deposition.

The problem with Lorna's argument is that United stated in the response to the interrogatory at issue that the biannual censuses were used solely "to calculate rates for the product and provide premium quotes to the group."  Lorna fails to explain why that answer does not directly address how United utilized the biannual census information and whether it made insurability determinations based on what the biannual censuses showed. Accordingly, Lorna fails to show that she suffered "substantial injustice" from the Magistrate Judge's denial of Lorna's renewed motion to depose United.[9]  We thus cannot overturn the District

_____

[9] Because we find that the District Court did not err by denying Lorna's discovery request, we do not address United's contention that Lorna waived her challenge to the District Court's discovery order by failing to invoke Rule 56(d) in opposing United's motion for summary judgment.  See Troiano v. Aetna Life Ins. Co., 844 F.3d 35, 45 (1st Cir. 2016) ("'If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition [to a summary judgment motion],' Rule 56(d) empowers the district court to 'allow time to obtain affidavits or declarations or to take discovery,' among other options" (alteration and emphasis in original) (quoting Fed. R. Civ. P. 56(d))).

Court's summary judgment rulings on this discovery-ruling-based ground.

### 3.

Lorna alternatively contends that, even if the record does not supportably show that United itself waived the evidence of good health requirement, it does supportably show (and, indeed establishes beyond dispute) that Duramax, acting with either actual or apparent authority, waived that requirement on United's behalf. Thus, she contends that for this distinct reason the District Court erred in granting summary judgment to United and denying summary judgment to her on her recovery-of-plan-benefits claim. Once again, we cannot agree.

The District Court determined that there was no basis for concluding that Duramax was acting as United's agent in the relevant respect. Indeed, the District Court concluded that there was insufficient evidence to render supportable a finding that Duramax was acting as United's agent even in collecting Evidence of Good Health forms. Shields, 527 F. Supp. 3d at 37. The District Court separately explained that it was rejecting the apparent-authority-based variant of the claim insofar as Lorna premised the claim on the Ninth Circuit's reasoning in Salyers v. Metropolitan Life Insurance Co., 871 F.3d 934 (9th Cir. 2017). According to the District Court, Salyers is distinguishable because of the lack of evidence of Duramax having acted as United's agent in collecting

statements of physical condition or other evidence of good health. Shields, 527 F. Supp. 3d at 37.

Lorna contends that the District Court's reasoning does not hold up. But, even if that were so, we may affirm the District Court on any ground manifest in the record. Lin v. TipRanks, Ltd., 19 F.4th 28, 36 (1st Cir. 2021). And, because we conclude that there is no basis in the record for finding that Duramax's conduct did suffice to manifest an intent to waive the good health requirement, we reject this variant of Lorna's challenge to the summary judgment rulings below.

As we have explained, "a waiver . . . [is] an intentional relinquishment or abandonment of a known right or privilege." Rodriguez-Abreu v. Chase Manhattan Bank, N.A., 986 F.2d 580, 587 (1st Cir. 1993) (emphasis added). The record does establish that Duramax informed Myron, through statements by the company's Human Resources manager, Thomas Spann, in response to Myron's October 2017 inquiry concerning his life insurance policies, that Myron was covered under the voluntary life insurance policy at three times his salary. But, the record contains no evidence to support an inference that Spann knew at the time of that representation that Myron had not satisfied the good health requirement. So, the record provides no basis to infer from Spann's provision of the wrong answer to Myron's question that Duramax, whether acting with

- 21 -

the actual or apparent authority to waive the good health requirement, intended to waive that requirement.

Lorna identifies no other evidence in the record that could show that Duramax intended to make the claimed waiver. As a result, Lorna's Duramax-based claim of a waiver of the good health requirement -- whether of the actual- or apparent-authority-based variety -- cannot survive summary judgment.

Salyers, we add, does not lead us to conclude otherwise. Salyers states that a party can be found to have waived a contractual provision if "that party's acts are so inconsistent with an intent to enforce the right as to induce a reasonable belief that such right has been relinquished," 871 F.3d at 938 (quoting Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1559 (9th Cir. 1991)). But, we permit a waiver to be inferred only "from conduct or language 'consistent with and indicative of an intent [by the waiving party] to relinquish voluntarily a particular right [such] that no other reasonable explanation . . . is possible.'" Ruiz v. Bally Total Fitness Holding Corp., 496 F.3d 1, 10 (1st Cir. 2007) (quoting Att'y Gen. v. Indus. Nat'l Bank of R.I., 404 N.E.2d 1215, 1218 n.4 (Mass. 1980)); cf. Pitts ex rel. Pitts v. Am. Sec. Life Ins. Co., 931 F.2d 351, 357 (5th Cir. 1991) ("[W]aiver describes the act, or the consequences of the act, of one party only, while estoppel exists when the conduct of one party has induced the other party to take a position that

would result in harm if the first party's act were repudiated." (citing Intel Corp. v. Hartford Accident & Indem. Co., 692 F. Supp. 1171, 1179 n.8 (N.D. Cal. 1988), aff'd in part, rev'd in part on other grounds, 952 F.2d 1551 (9th Cir. 1991)) (emphases omitted)); Plitt et al., 6 Couch on Insurance § 85:2 (3d. ed. 2022) ("A distinction exists between waiver and estoppel in that waiver is based upon an actual intent to abandon or surrender a right, whereas in estoppel intent is immaterial, the necessary condition being the deception of the insured to his or her injury by way of acts or conduct inconsistent with the terms of the policy upon which the insured relies to his or her injury.").

## III.

We turn now to Lorna's breach-of-fiduciary-duty claim. ERISA assigns to a fiduciary of an employee welfare benefit plan the obligation to "discharge [its] duties with respect to a plan solely in the interest of the [plan's] participants and beneficiaries." 29 U.S.C. § 1104(a)(1). ERISA provides that the Plan Administrator is the "named" fiduciary and, in that role, owes certain fiduciary duties to its employees. 29 U.S.C. § 1102(a)(2). ERISA also provides, however, that a party that is not the Plan Administrator may be obliged to "discharge [its] duties with respect to a plan solely in the interest of the [plan's] participants and beneficiaries," 29 U.S.C. § 1104(a)(1),

when it exercises certain kinds of discretion in the management and administration of the plan, 29 U.S.C. § 1002(21)(A).

Such a "functional fiduciary" acquires that status "to the extent" that it "exercises any discretionary authority or discretionary control respecting management" of an employee welfare benefit plan, "exercises any authority or control respecting management or disposition of its assets," or "has any discretionary authority or discretionary responsibility in the administration of such plan."  29 U.S.C. § 1002(21)(A); see also In re Fid. ERISA Fee Litig., 990 F.3d 50, 55 (1st Cir. 2021) ("[F]unctional fiduciary status is not an all-or-nothing designation.  A person or entity can be a fiduciary of a plan for some purposes and not for others" (citation omitted)).  We determine whether a party is a functional fiduciary by looking to the terms of the relevant written instrument for the employee welfare benefit plan, see Varity Corp. v. Howe, 516 U.S. 489, 502 (1996) ("The ordinary trust law understanding of fiduciary . . . is to perform the duties imposed, or exercise the powers conferred, by the trust documents."), and taking account of actual practices under that plan.  See Pegram v. Herdrich, 530 U.S. 211, 226 (2000) ("In every case charging breach of ERISA fiduciary duty . . . the threshold question is . . . whether that person was acting as a fiduciary" (emphasis added)).

Lorna alleges in her breach-of-fiduciary-duty claim against United that, although Duramax is the Plan Administrator and thus the "named" fiduciary, United is a functional fiduciary with respect to eligibility determinations and that United breached that functional fiduciary duty to Myron. In so claiming, Lorna first alleges that, by virtue of its discretion to make eligibility determinations, United had a fiduciary duty to notify Myron of the outcome of any determination that it had made as to his eligibility for excess coverage and that it breached this duty by making such a determination without notifying him of it. She then separately alleges that United, in consequence of its discretion to make eligibility determinations, owed Myron a fiduciary duty to timely determine his eligibility for excess coverage when it began accepting his premiums for that coverage and that it breached this fiduciary duty as well by not making such a determination for nearly a decade thereafter. The District Court granted summary judgment to United -- and denied summary judgment to Lorna -- on Lorna's breach-of-fiduciary-duty claim as to both the duty-to-notify and timeliness-of-determination-of-eligibility variants of it. Shields, 527 F. Supp. 3d at 40. We consider Lorna's challenge to the rulings against her as to each variant of the claim in turn.

**A.**

Lorna first contends that the record not only supportably shows but also indisputably establishes that United had a fiduciary duty to notify Myron that he was uninsurable. She then further contends that the record both supportably shows and indisputably establishes that United breached this duty by accepting premiums from him even though United had determined he was not insurable. Thus, she contends that the District Court erred in granting summary judgment to United and denying summary judgment to her on this variant of her breach-of-fiduciary-duty claim. We are not persuaded.

In granting summary judgment to United on Lorna's notice-based version of her fiduciary breach claim, the District Court determined that the record establishes beyond dispute that United was never informed that Myron had selected excess coverage and so made no insurability determination that could have triggered the claimed notification duty. Shields, 527 F. Supp. 3d at 39. We agree.

Even assuming that United had the claimed duty -- a matter on which we take no view -- Lorna's challenges to the District Court's summary judgment rulings as to this variant of her breach-of-fiduciary-duty claim rest solely on the same contentions about the inferences involving the biannual censuses that she argues are supportable on this record but that we found

wanting in rejecting her challenges to the District Court's adverse summary judgment rulings on her recovery-of-plan-benefits claim. Thus, we see no basis for overturning the summary judgment rulings in question because nothing in the record permits a supportable inference that United made an insurability determination regarding Myron's excess coverage that could have triggered the claimed duty to notify.[10]  See Mondol, 746 F. App'x at 37.[11]

**B.**

We turn, then, to Lorna's challenges to the District Court's grant of summary judgment to United -- and denial of

---

[10] Alternatively, Lorna contends that, after receipt of the biannual census, United determined that Myron was insurable even though Myron had not fulfilled the good health requirement, thus waiving that requirement.  In that case, Lorna argues that United has a fiduciary duty not to reverse that determination now.  Because this waiver argument fails as explained in Part II, the duty Lorna assigns to United could not have been triggered.

[11] Lorna does relatedly contend -- in much the same way that she does with respect to her recovery-of-plan-benefits claim -- that even if the record lacks evidence from which it could supportably be found that United had determined that Myron was ineligible for the life insurance coverage for which he was paying for premiums to United that United was accepting, that "hole[] [in the record] only exist[s] by virtue of the District Court's decision to deny [her] the opportunity to fill [it]" by "engag[ing] in meaningful discovery."  And, Lorna argues that the District Court's order adopting the Magistrate Judge's decision denying her motion seeking leave to depose United under Rule 30(b)(6) was in error.  But, for the reasons that we have explained in the context of the recovery-of-plan-benefits claim, we find no error by the District Court in denying her request for discovery.  And that is so, even if we assume that Lorna is right that the "strong presumption" against discovery in ERISA cases, Liston v. Unum Corp. Officer Severance Plan, 330 F.3d 19, 23 (1st Cir. 2003), does not apply here.

summary judgment to her -- on the other variant of her breach-of-fiduciary-duty claim.  Here, she argued that United breached the fiduciary duty that it owed to Myron by "accept[ing] . . . premiums for nearly a decade" while "making no effort to confirm" Myron's eligibility for coverage.

In granting summary judgment to United on this variant of the claim, the District Court reasoned that United's fiduciary duties under the Plan did not "extend[] to checking the work of Duramax to ensure that [Duramax] fulfilled its fiduciary duty as plan administrator to inform Myron of the [good health] requirement."  Shields, 527 F. Supp. 3d at 39.

As we will explain, we are not persuaded.  We conclude instead that the uncontradicted record shows that United did have the claimed duty under the Plan to timely determine Myron's eligibility for excess coverage.  To explain why we so conclude, we explain first that, as a general matter, ERISA recognizes that the terms of an employee welfare benefit plan may impose on an insurer the fiduciary duty Lorna describes.  We then explain that the record establishes without contradiction that the Plan does impose that duty on United.  Finally, we turn to the issue of breach.

**1.**

Our Circuit has not had occasion to decide in any prior case whether an insurer is a functional fiduciary under ERISA in

circumstances like those at issue here. But, as we have explained, under ERISA, a party is a fiduciary "to the extent" it "has any discretionary authority or discretionary responsibility in the administration" or "management" of a plan. 29 U.S.C. § 1002(21)(A). Thus, if a plan confers on an insurer the discretion to choose when to accept premiums from an employee and when to determine if an employee is eligible for coverage, then the insurer has the kind of discretion in setting the relative timing of those two determinations that would suffice to impose a functional fiduciary duty on the insurer in exercising that discretion with respect to the plan's employees. As a result, such an insurer has a fiduciary duty to those employees to make eligibility determinations for each employee from whom the insurer accepts premiums reasonably proximate to the acceptance of those premiums.

This conclusion accords with the rulings of other courts. In McCravy v. Metropolitan Life Insurance Co., 690 F.3d 176 (4th Cir. 2012), the Fourth Circuit permitted a breach-of-fiduciary-duty claim under ERISA to go forward that alleged that the insurer had breached its fiduciary duty by continuing to accept premiums for coverage from an employee without confirming that the employee's insured dependent was still eligible for that coverage, id. at 178, 182. And, in Silva v. Metropolitan Life Insurance Co., 762 F.3d 711 (8th Cir. 2014), the Eighth Circuit allowed a similar claim to proceed where the beneficiary argued that the

insurer breached its fiduciary duty by continuing to accept premiums for coverage from that employee without confirming that the employee's required evidence of insurability had been approved, id. at 713-16. Two district courts have also come to similar conclusions. See Skelton v. Davidson Hotels LLC, Civ. No. 18-3344, 2020 WL 6875503 (D. Minn. Nov. 23, 2020), aff'd sub nom. Skelton v. Radisson Hotel Bloomington, 33 F.4th 968 (8th Cir. 2022); Frye v. Metro. Life Ins. Co., No. 3:17-cv-31, 2018 WL 1569485 (E.D. Ark. Mar. 30, 2018).

United does contend that there are many contrary precedents. But, a careful review of the precedents on which United relies shows otherwise. In fact, we are aware of no court that, when presented with an analogous breach-of-fiduciary-duty claim under ERISA, has held that the claim failed because the asserted duty to make an insurability determination at a time reasonably proximate to the acceptance of premiums from those employees could not be a fiduciary duty under ERISA at all.[12]

---

[12] The cases on which United relies in asserting otherwise either concern only a recovery-of-plan-benefits claim under § 1132(a)(1), see Bjelopetrovich v. UNUM Life Ins. Co. of Am., 275 F. Supp. 3d 939 (N.D. Ill. 2017) (A breach-of-fiduciary-duty claim was pled by the plaintiff, but only the recovery-of-plan-benefits claim was analyzed by the district court); Funicelli v. Sun Life Fin. (US) Servs. Co., No. 12-06659, 2014 WL 197911 (D.N.J. Jan. 14, 2014); Rowello v. Healthcare Benefits, Inc., No. 12-4326, 2013 WL 6510475 (D.N.J. Dec. 13, 2013); Yale v. Sun Life Ins. Co. of Canada, No. 1:12-cv-01429, 2013 WL 5923073 (E.D. Cal. Oct. 31, 2013); Everett v. United Omaha Life Ins. Co., No. 3:11-0926, 2013 WL 5570222 (M.D. Pa. Oct. 9, 2013); Colardo v. Metro. Life Ins.

- 30 -

Co., No. 8:10-cv-1615-T-30, 2011 WL 1899253 (M.D. Fla. Mar. 16, 2011); Wagner v. Unison Admin. Serv., No. 07-1008, 2009 WL 891870 (W.D. Pa. Mar. 31, 2009); O'Connor v. Provident Life & Acc. Co., 455 F. Supp. 2d 670 (E.D. Mich. 2006); Kehoe v. Ryder Truck Renter, Inc., No. 05-2139, 2006 WL 2414197 (E.D. La. Aug. 17, 2006); Lawler v. Unum Provident Corp., No. 05-cv-71408, 2006 WL 2385043 (E.D. Mich. Aug. 17, 2006); Suazo v. G.F.I. Am. Emp. Ben. Plan, No. 03-cv-02601, 2006 WL 118399 (D. Colo. Jan. 13, 2006); Hargis v. Idacorp Energy L.P., No. H-04-1692, 2005 WL 6456898 (S.D. Tex. Oct. 26, 2005), or breach-of-fiduciary-duty claims that are easily distinguishable on the facts, see Talasek v. Unum Life Ins. Co. of Am., No. 4:18-cv-3306, 2020 WL 7775450 (S.D. Tex. Dec. 15, 2020) (finding that, when an insurer actually made a determination that an enrollee was uninsurable -- unlike here, where United never made a determination as to Myron's insurability -- because of abnormal blood test results, but the insurer continued to accept premiums as if the enrollee was insurable, the payments of premiums alone did not entitle the enrollee to coverage); Gordon v. Cigna Corp., 890 F.3d 463 (4th Cir. 2018) (insurer had no fiduciary duty regarding insurability determinations when the plan documents -- unlike the Plan at issue here -- assigns eligibility verification to the employer, not the insurer); McBean v. United Omaha Life Ins. Co., No. 18-166, 2019 WL 1508456 (S.D. Cal. April 5, 2019) (finding that an insurer had no fiduciary duty to "have a system in place that would confirm eligibility before accepting premiums" because the plan's terms expressly gave the employer the responsibility to determine eligibility -- unlike the Plan here, which allocates that responsibility to United -- and the employer was to inform the insurer if it determined that an employee's eligibility changed); Brenner v. Metro. Life Ins. Co., No. 11-12096, 2015 WL 1307394 (D. Ma. Mar. 23, 2015) (concluding that an insurer, even though it was a "fiduciary with respect to . . . [its] 'discretionary authority to determine an employee's eligibility for and entitlement to Plan benefits,'" was not "liable for failing to send an individual notice of conversion or otherwise advise [an employee] of their rights" -- a fiduciary duty Lorna does not contend United has -- because that was an administrative duty and typically the responsibility of the plan administrator, which was the employer); Van Loo v. Cajun Operating Co., 64 F. Supp. 3d 1007 (E.D. Mich. 2014) (rejecting the argument that an insurer had a fiduciary duty to send an employee a proof of good health form -- which is distinct from the fiduciary duty asserted here -- because the court there found that it was the Plan Administrator's job to "ensur[e] that coverage elections . . . are processed in accord with the terms and conditions of the applicable policy" and the insurer had no discretion in that regard); Rainey

The American Council of Life Insurers (ACLI) has submitted an amicus brief in support of United. It contends that the recognition of an insurer's fiduciary duty to take reasonable steps to confirm an employee's eligibility for insurance at a time reasonably proximate to the insurer's acceptance of premiums for that coverage would "conflict[] with the terms of ERISA and with [c]ongressional goals in enacting ERISA." The ACLI argues that is so because "the primary purpose of ERISA . . . was to create a regulatory scheme that was not so administratively onerous and expensive as to discourage employers from offering benefits in the first place."

The U.S. Department of Labor ("DOL"), however, has submitted an amicus brief that takes the opposite position. According to DOL, a recognition that ERISA may, depending on the terms of the employee welfare benefit plan at issue, impose the duty at issue on an insurer is congruent with the purpose of ERISA. DOL emphasizes that construing ERISA not to recognize such a

v. Sun Life Assurance Co., Cv. No. 3:13-cv-0612, 2014 WL 4053389 (M.D. Tenn. Aug. 15, 2014) (finding that an insurer did not breach its fiduciary duty with respect to eligibility determinations by waiting to make that determination until a claim for benefits was submitted when, unlike here, the insurer had no role in making eligibility determinations prior to the submission of a claim for benefits). The single remaining case, Meltzer-Marcus v. Hitachi Consulting, No. 03-C-7687, 2005 WL 2420367 (N.D. Ill. Sept. 30, 2005), held that § 1132(a)(3) was unavailable as a cause of action if the plaintiff could bring any other claim under ERISA, but this restrictive reading of § 1132(a)(3) was subsequently rejected in CIGNA Corp. v. Amara, 563 U.S. 421 (2011).

- 32 -

fiduciary duty on the part of an insurer when a plan confers such discretion on an insurer "would encourage abuse" (quoting McCravy, 690 F.3d at 183). Insurers, DOL argues, would be incentivized to "set[] up a system in which [the insurer is] completely blind to whether employees paying for . . . coverage . . . [are] actually eligible for that coverage" while accepting premiums for "non-existent coverage" nonetheless.

We conclude that DOL has the better of the argument. The Supreme Court of the United States has explained that the "primary function" of a fiduciary duty under ERISA "is to constrain the exercise of <u>discretionary</u> powers which are controlled by no other specific duty," <u>Varity Corp.</u>, 516 U.S. at 504 (emphasis in original), so that "employees will not be left empty-handed" by insurers or employers who pull the rug out from underneath them, <u>Lockheed Corp.</u> v. <u>Spink</u>, 517 U.S. 882, 887 (1996). We thus find it significant that, in the absence of an insurer having the fiduciary duty to make reasonable efforts to determine an employee's eligibility for coverage at a time reasonably proximate to the insurer's acceptance of that employee's premium payment for coverage, "[t]he biggest risk [the insurer] would face . . . would be the return of their ill-gotten gains [through premium refunds], and even this risk would only materialize in the (likely small) subset of circumstances where plan participants actually needed the benefits for which they had paid." <u>McCravy</u>, 690 F.3d at 183.

Moreover, with no such fiduciary duty in place, the upside for the insurer would be "essentially risk-free windfall profits from employees who paid premiums on non-existent benefits but who never filed a claim for those benefits."  Id.

As a result, we see no conflict between the recognition of the fiduciary duty of an insurer that is at issue here and the purposes underlying ERISA.  Rather, an interpretation of ERISA that would make an issuer a functional fiduciary in the way that Lorna describes would accord well with the purpose of ERISA that the Supreme Court has identified.

**2.**

We turn, then, to United's contention that the record establishes that United had no such duty under the terms of the Plan.[13]  But, here, too, we disagree.  In fact, we conclude that the record conclusively shows the opposite.

As Lorna emphasizes, the Plan provides that United has "the discretion and the final authority to construe and interpret" the Plan, including to "decide all questions of eligibility and

_____

[13] As explained above, two versions of the Plan were in effect at different points during Myron's employment at Duramax.  The parties disagree about which version Lorna's breach-of-fiduciary-duty claim should be adjudicated under: United contends that we should use the 2017 Plan, while Lorna contends that the 2007 Plan is the most applicable.  Because we conclude that United has the fiduciary duty that Lorna contends it does even under the terms of the 2017 Plan, we utilize the language in the 2017 Plan for our analysis of the breach-of-fiduciary-duty claim.

all questions regarding the amount and payment of any [Plan] benefits within the terms of the [Plan] as interpreted by [United]." In addition, as she also emphasizes, the Plan provides that benefits under the Plan "will be paid only if [United] decide[s], in [United's] discretion, that a person is entitled to them."

We agree with Lorna that, by conferring this broad discretion on United, the Plan imposes a fiduciary duty on United with respect to determining a person's eligibility for benefits. See 29 U.S.C. § 1002(21)(A). The question for us remains, though, as to how, if at all, that general fiduciary duty relates to the more specific fiduciary duty that Lorna claims that United breached.

United contends that there is no ground for reading the more specific duty on which Lorna's claim depends into the more general one. United asserts that its fiduciary duty to make eligibility determinations -- insofar as it has that duty -- is only triggered under the Plan when it is asked to make such a determination through the transmission of an Evidence of Good Health form from Duramax to United. To bolster the point, United emphasizes that the Plan does not explicitly assign to United the responsibility of ensuring that an employee does not pay premiums for coverage for which that employee is ineligible.

The Plan does give United full discretion, however, to "decide all questions of eligibility." In addition, the Plan does so without assigning to either Duramax or United any responsibility to verify that employees who pay premiums are eligible for the coverage for which those premiums are paid.

To be sure, the Plan does contain the disclaimer that "[p]ayment of premium[s] does not guarantee eligibility for coverage." But, it would be reading too much into that sentence to interpret it to grant United a license to indefinitely accept premiums from employees for coverage that it is not providing without having taken reasonable steps to determine whether those employees were eligible for that coverage. Rather, we read that sentence merely to be referring to the fact that, as discussed above, an employee becomes insured only when United makes the relevant discretionary eligibility determinations with respect to that employee.

That the Plan provides that coverage will not begin until United makes an insurability determination also is of little import for present purposes. In reserving to Duramax the responsibility to collect premiums from employees and transmit those premiums to United, the Plan does not place any of the responsibility for ensuring ineligible employees are not paying premiums on Duramax. Nor does the Plan cabin United's discretion to determine how and when it makes its eligibility determinations in relation to its

receipt of premium payments. The Plan also does not prohibit United from accepting premiums from such employees -- though the Plan does prevent ineligible but premium-paying employees like Myron from receiving coverage.

Thus, we conclude that there is nothing in the Plan that contradicts Lorna's position. For, as we have explained, a review of the Plan's terms makes clear that the Plan confers on United not only the discretion to make eligibility determinations but also the discretion to determine whether an employee is entitled to the coverage for which premiums are paid within a time that is reasonably proximate to United's acceptance of those premiums. See Skelton, 33 F.4th at 975 (finding that the insurer had a fiduciary duty "to maintain an effective enrollment system" and that it had breached that duty by failing to have a system in place to ensure that premiums were not collected from employees who were not eligible and enrolled).

This reading of the Plan, we emphasize, does not render a nullity the language in it that assigns the responsibility "for enrolling eligible persons for coverage" to Duramax. As Plan Administrator responsible for "enrollment," Duramax's obligations could include communicating with its employees, aiding them in filling out forms, and collecting the correct premiums from employees and remitting them to United. By contrast, United retains control under the Plan over when it makes that eligibility

determination in relation to its acceptance of premiums remitted to it from Duramax on an employee's behalf. For that reason, our conclusion here is not inconsistent with the conclusion in Sullivan-Mestecky v. Verizon Communications, Inc., 961 F.3d 91 (2d Cir. 2020), that an insurer had no duty to "check[ the employer]'s work to confirm that [the employee] had been properly enrolled" when the terms of the employee welfare benefit plan assigned the employer, not the insurer, the duty to "assess[ the employee]'s eligibility for . . . enrolling in [the] benefits plan," id. at 103-04. Nor is our conclusion at odds with the conclusion in Gordon v. CIGNA Corp., 890 F.3d 463 (4th Cir. 2018), that an insurer was not a fiduciary with respect to employee eligibility determinations and could not be held liable for the employer's transmission of employee's premiums to the insurer when the employee was not eligible for coverage because the employee welfare benefit plan assigned the employer, not the insurer, the duty for "eligibility verification," id. at 474.

We also are not convinced by the ACLI's argument that United does not have the fiduciary duty at issue because there has been no clear delegation of the underlying discretion that could give rise to that duty. Compare 29 U.S.C. § 1104(a)(1)(B) (mandating that every ERISA plan have at least one named fiduciary that is bound to exercise its responsibilities with "care, skill, prudence, and diligence"), with id. § 1002(21)(A) (providing that

an actor is a fiduciary only "to the extent" that such an actor exercises certain types of discretion in the administration or management of a plan).  The Plan does not merely delegate to United in clear terms the general discretionary authority to make the eligibility determination.  It also does so without then limiting that authority in any relevant respect.  Thus, as part of the more general delegation of discretion, the Plan necessarily also delegates the more specific grant of discretionary authority to determine when that determination is made in relation to when premiums are accepted.

Finally, United contends that the determination of eligibility is a ministerial rather than a discretionary function. United attempts to draw support for this contention from DOL regulations that deem duties non-fiduciary when they fall "within a framework of policies, interpretations, rules, practices and procedures made by other persons, [who are] fiduciaries with respect to the plan."  29 C.F.R. § 2509.75-8.  But, as we have just explained, nothing in the Plan purports to establish a policy regarding the timeliness of acceptance of premiums vis-a-vis the insurability determination.  Thus, United's duty in making those decisions cannot be ministerial.

### 3.

Of course, to determine whether Lorna can succeed on her challenge to either the grant of summary judgment to United or the

denial of summary judgment to her on her breach-of-fiduciary-duty claim, we must also address whether United breached the claimed fiduciary duty. We thus now turn to the question of what the record shows about whether United, in deciding when to make the insurability determination in relation to the acceptance of premiums from Myron, failed to act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity" would have. Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Transp., Inc., 472 U.S. 559, 571 (1985) (quoting 29 U.S.C. § 1104(a)(1)(B)).

Lorna contends that the record establishes that United failed to determine if Myron was eligible for excess coverage before accepting premiums from Myron for excess coverage. But, if Lorna means to argue that United's failure to make an eligibility determination for Myron before accepting Myron's premiums in and of itself suffices to show that there was a breach of the duty at issue, we do not agree. That failure is plainly not on its own dispositive in showing that there was a breach of the fiduciary duty at issue, because Lorna does not appear to dispute that United could satisfy the fiduciary duty that she is claiming United owed Myron by, as DOL puts it, confirming eligibility within a reasonable time after premiums for coverage are accepted.

More promising, then, is Lorna's contention that the record establishes that there was a breach because United accepted

premiums for excess coverage from Myron for nearly ten years while "making no effort to confirm" his eligibility for that coverage. Nonetheless, the District Court did not address what the record supportably -- let alone indisputably -- shows about whether United took reasonable steps to confirm Myron's eligibility for excess coverage in a timely manner after accepting his premiums. Accordingly, although we agree with Lorna that the District Court's grounds for ruling as it did on the motions for summary judgment concerning this breach-of-fiduciary-duty claim do not hold up, we leave the determination about what the record supportably shows -- and conclusively establishes -- with respect to the breach question to the District Court to make in the first instance. We thus vacate the District Court's summary judgment rulings on this claim. See Silva, 762 F.3d at 728 (recognizing an insurer's eligibility-based fiduciary duty, reversing the District Court's grant of summary judgment to the insurer and denial of summary judgment to the employee, and remanding to the District Court for further proceedings).

**IV.**

We **affirm** the District Court's denial of Lorna's motion for additional discovery. We further **affirm** the District Court's grant of summary judgment to United and denial of summary judgment to Lorna on Lorna's recovery-of-plan-benefits claim, but we **vacate** the District Court's denial of summary judgment to Lorna and grant

of summary judgment to United on Lorna's breach-of-fiduciary-duty claim and **remand** to the District Court for further proceedings not inconsistent with this opinion.  Costs awarded to appellant.